51 CCPA

**Application of George C. SULLIVAN.**

**Patent Appeal No. 7082.**

United States Court of Customs and Patent Appeals.

Jan. 23, 1964.

Martin E. Hogan, Jr., Stevens, Davis, Miller & Mosher, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

MARTIN, Judge.

This is an appeal from that part of the decision of the Board of Appeals which affirmed the examiner's rejection

of claim 5 to 12 of appellant's application serial No. 633,480 filed January 10, 1957 for BUILDING PANELS AND THE LIKE. No claim is allowed.

The application involved in this appeal is stated to be "a continuation of Application Serial Number 375,982, filed August 24, 1953, which is a continuation-in-part of my Application Serial Number 173,998, filed July 15, 1950."

Claims 5, 7 and 9 are representative and read:

"5. A laminated structure comprising a pair of confining surface sheets, a honeycomb spacer element embodying a plurality of uniform open-ended cells positioned in substantially perpendicular relation to said confining surface sheets, a cured adhesive foam layer formed from a foamable mixture of an alkyd resin having an acid number of 5 to 80 and a liquid diisocyanate blowing agent, said foam layer expanded to completely fill the cross-section of the interstices of said spacer element whereby said confining surface sheets are bonded to the edge portions of the walls of said spacer element.

"7. The method of fabricating an article of the type described, which includes the steps of coating a surface with a foam-forming mixture prepared from a foamable alkyd resin having an acid number of 35 to 45 and an isocyanate blowing agent, arranging a reinforcing apertured spacer core on said surface in contact therewith while said mixture is still in a liquid state, maintaining the apertured spacer core and surface in contact, reacting and expanding said mixture into a cellular foam layer, to bond said surface and said core into a unitary article without the use of additional adhesive.

"9. The method of preparing a laminated sandwich structure comprising the steps of (1) placing a thin layer of a foamable mixture prepared from a foamable alkyd resin having an acid number of 35 to 45 and an isocyanate blowing agent on a facing sheet and pressing a rigid uniform honeycomb spacer element embodying a plurality of open-ended cells into the foamable mixture, (2) placing another facing sheet having a thin layer of said foamable mixture, on top of the spacer element and maintaining the sandwich structure in assembled relationship, and (3) completing the sandwich structure by expanding the foamable mixture until the upper and lower ends of the interstices of the spacer element are substantially completely filled with foam and the spacer walls are adhesively joined to the facing sheets by a layer of adhesive foam on each facing sheet."

Appellant's application describes a laminated structure consisting of two outer surface sheets of "metal sheets, plywood, veneer, cardboard, glass, plastic sheets, or the like" spaced apart by an internal reinforcing spacer member of "cardboard, metal, plastic, or the like." The spacer member is formed of sheet material so that an "egg crate" or "honeycomb" cellular construction is achieved. A cellular resin lamination or layer serves as a permanent adhesive to secure the spacer member to the outer surface sheets.

In preparing the laminated structure, appellant applies to the inner surfaces of the surface sheets a liquid adhesive composition of a foamable mixture of an alkyd resin having an acid number of 5 to 80 and a liquid diisocyanate blowing agent. The internal reinforcing spacer member is arranged between the surfacing sheets and the adhesive composition and allowed to react in situ to set up and harden as a foam adhesive so as

to secure the spacer member and sur-facing sheets together.

Reproduced below are Figs. 1 and 2 of appellant's application:

Fig. 1 is a fragmentary perspective view of one form of building unit of appellant's invention with edge portions of the unit appearing in cross-section, while Fig. 2 is an enlarged fragmentary longitudinal sectional view of the unit illustrated in Fig. 1.

Referring to Figs. 1 and 2, appellant's unit comprises generally, spaced outer sheets 10 and 11, an internal structure 12 which in Figs. 1 and 2 is a reticulated assembly of slitted inter-fitting strips 15, and laminations 13 of the cellular ad-herent material. Inter-fitting strips 15 define substantially square or rectangular air spaces 14. Appellant states in his application that the "spaced opposite-ly facing slits in the strips 14 [sic] are indicated at 9." Appellant has submitted a sample [1] of a structure which is repre-sentative of his invention.

Appellant's laminated structures pro-vide "building units such as panels, slabs, blocks, tiles, and the like, of the prefab-ricated type suitable for incorporation in buildings and other structures of

1. Exhibit A.

widely varying types." The application states the structures are "inexpensive to manufacture, are easy and simple to handle, transport and install, are light in weight and yet strong, and have excellent thermal and acoustical insulating characteristics."

The references relied on by the examiner and the board are:

| | | |
|---|---|---|
| Carter | 2,099,598 | Nov. 16, 1937 |
| Del Mar | 2,556,470 | June 12, 1951 |
| | (filed Nov. 22, 1947) | |
| Kropa et al. | 2,576,073 | Nov. 20, 1951 |
| | (filed Jan. 19, 1946) | |
| Simon et al. | 2,577,279 | Dec. 4, 1951 |
| | (filed June 25, 1948) | |
| Pace | 2,744,042 | May 1, 1956 |
| | (filed June 21, 1951) | |
| de Bruyne et al. (British) | 577,790 | May 31, 1946 |

Carter discloses a laminated construction which consists of flat surfacing sheets with an adhesive coating on the inner surfaces and a corrugated core member bonded therebetween.

Del Mar discloses plates coated on the inner surface with a synthetic resin bonding agent and a honeycomb core element bonded therebetween.

Kropa et al. disclose a structural material comprising a reinforcing core strip of corrugated configuration, surfacing sheets and an expanded resinous alkyd resin.

Simon et al. disclose a foamable mixture prepared from alkyd resins having acid numbers from 5 to 20 and 25 to 60 and a diisocyanate foaming or blowing agent.

Pace discloses a method for manufacturing panels wherein a honeycomb spacer is filled with a foamed resin.

de Bruyne et al. disclose a honeycomb structure adhered to surface "skins" by a foamed synthetic resinous adhesive.

Claims 5 to 12 were rejected by the examiner as unpatentable over either Kropa et al. or de Bruyne et al., each in view of Simon et al. In the opinion of the examiner appellant distinguishes over Kropa et al. or de Bruyne et al. only in the specific foam adhesive used. The substitution of one well-known foamed adhesive such as that of Simon et al. for another foamed adhesive was not considered by the examiner to involve "patentable ingenuity." The board sustained that rejection for the reasons given by the examiner.

The board also affirmed the examiner's rejection of claims 9 to 12 as unpatentable over Carter or Del Mar in view of Simon et al. The board considered appellant's application of the foamable bonding agent to the elements of the structure and assembling would be apparent from the disclosures of Carter or Del Mar. The board stated that the "application of the particular bonding agent as taught by Simon could not, in our opinion, be considered unobvious."

The board further sustained the examiner's rejection of claims 5 and 6 over the Pace patent, which has an effective date of June 21, 1951. The board considered appellant's claims 5 and 6 to read on the foam filled honeycomb core of Pace and held that appellant was not entitled to the July 15, 1950 filing date of his parent application serial No. 173,998 since a foam filled honeycomb core was

not originally disclosed by appellant in that application.

The board also sustained the examiner's rejection of a group of claims including claims 5 and 6 on the basis that the specification lacks support for certain limitations. The other claims in the group are not before us but apparently as far as claims 5 and 6 are concerned, the board referred to the limitation relative to "completely" filling the cross-section of the interstices of the spacer element. The board stated that no basis can be found in the specification indicating that the interstices are "completely" filled with foam. The board further considered that the language in claims 5 and 6 is indefinite since it "reads on completely filling the entire core of the honeycomb within the surface sheets."

Appellant contends that the combination of either Kropa et al. or de Bruyne et al. with Simon et al. does not anticipate the claims. It is urged that the primary references lack appellant's "eggcrate" construction recited in claims 5 and 6 and that the Simon et al. patent relates only to "the chemical method of a reactant mixture which will result in a foamed plastic." Appellant argues that "no reference or combination of references as combined by the Patent Office anticipates or teaches the series of steps recited in claims 7 through 12."

Appellant contends that the Pace patent cannot be considered "as a reference because of its late date."

Appellant argues that a consideration of claims 5 and 6 in connection with the illustrations in Figs. 1 and 2, taken together with Exhibit A, if necessary, should clearly demonstrate that there is nothing indefinite about the structure set forth in these claims.

The issues can be summarized as follows: (1) did the board err in affirming the examiner's rejection of claims 5 to 12 as unpatentable over the references applied against these claims and (2) did the board err in affirming the examiner's rejection of claims 5 and 6 as "lacking adequate support in the specification or as indefinite."

Since *all* the claims stand rejected as unpatentable over "either Kropa et al. or de Bruyne et al., each in view of Simon et al," that rejection will be given first consideration.

Kropa et al. disclose fabricated lightweight structural materials in the form of laminates, one embodiment of which is reproduced below:

In that figure, A represents a surface sheet, B a porous low-density resinous material which may be obtained by polymerizing a mixture comprising an unsaturated alkyd resin, a gas-liberating agent and styrene or an ester of allyl alcohol, and C a *re-enforcing* strip. A and C may be of any suitable material such as of metal or of wood. In describing the porous low-density material, the patentees state:

"The porous low-density material comprises essentially a low-density resin obtained by polymerizing a homogeneous mixture of a polymerizable unsaturated alkyd resin, a liquid having a boiling point of at

least 100° C. and containing a $CH_2=C<$ group, and a gas-liberating material. If desired, a panel of the above described foamed resin may be affixed to surface sheets as a unit. *It is more desirable, however, to grind a portion of the foamed resin and mix it with an additional portion of a polymerizable resinous composition so that the ground resin acts as a low-density filler. This mixture may then be polymerized in situ between suitable surface sheets.*

"Furthermore, if it is desired, *the ground foamed resin may be mixed with a homogeneous mixture includ-ing a polymerizable unsaturated alkyd resin, a liquid having a boiling point of at least 100° C. and containing a $CH_2=C<$ group, and a gas-liberating material. This polymerizable mixture is then cured in situ between suitable surface sheets.*"

[Emphasis ours.]

de Bruyne et al. relate to the manufacture of light, non-metallic structural material. They describe the product as a "*honeycomb-like*, cellular or reticulated formation." [Emphasis ours.] Figs. 8 and 9 of the de Bruyne et al. patent, reproduced below, are pertinent:

FIG.8.

FIG.9.

In Fig. 8 is illustrated in perspective the main portion of a tail-plane covered over with "skin" 35. Fig. 9 shows how the "skin" may be attached to achieve the result in Fig. 8.

Referring to Fig. 9, the walls of the cells are at 36. Over the ends of the cells is pressed a layer of impregnated fabric 37, this layer being bound over the edges of walls 36 by stitching or stringing 38'.

Over each layer 37 is spread unset resin material 38. Over this material 38, "skin" 39 is laid, this being of impregnated veneer, further fabric, a layer of thin material treated with unset resin adhesive on its inner surface or a combination of these. Heat is now applied to "skins" 39 with a pressure between them which is not so great as to crush the walls 36 but is sufficient to cause the hitherto unset resin to set, with the result that it homogenizes, or *firmly adheres* to, the walls 36. *The resin material at 38 may contain a material such as paraformaldehyde to gasify the resinous wall during the setting reaction* so as to produce a mass of relatively low-density, but having a certain mechanical strength and rigidity.

Simon et al. provide a method for "producing light weight cellular or foamed plastic material which does not necessitate the employment of special equipment and which permits the direct application or introduction of the material to the parts or cavity to immediately bond with the surfaces thereof." According to the patentees' method "the plastic and the foaming agent or agents are simply mixed together and poured into the cavity or otherwise applied to the parts to directly bond with the surfaces thereof and to assume a cellular or foamed condition." Simon et al. teach their cellular material, resulting from a foamable mixture of alkyd resins having acid numbers from 5 to 20 and 25 to 60 and a diisocyanate blowing agent, has:

"* * * excellent adhesion to the various metals, woods, etc. and closely conforms with the contours of even very complex spaces or cavities and is therefore adapted for use in situations where preformed or precut material are not practical."

We think that product claims 5 and 6 would have been obvious to a person of ordinary skill in the art having knowledge of the Simon et al. and Kropa et al. or de Bruyne et al. patents. Kropa et al. teach a laminated structure comprising a pair of confining sheets, a reinforcing spacer element and a cured foam layer formed from a foamable alkyd resin that is formed *in situ*. Said foam layer is expanded to fill the cross-section of the interstices [2] of the spacer element. Although Kropa et al. may prepare their laminates by curing an "interliner" of a viscous foamable composition containing an alkyd resin and a polymerizable composition which has been placed between two sheets impregnated with that same polymerizable composition, we do not consider that of any significance with respect to product claims 5 and 6. Kropa et al. do not show a "honeycomb" spacer element. However, we consider such modification of the spacer element in Kropa et al. to be within the ordinary skill of the art.

The laminated structure in the de Bruyne et al. patent comprises a pair of surface sheets, a honeycomb spacer element of uniform open-ended cells positioned in substantially perpendicular relation to said confining surface sheets and a cured adhesive foam layer that can be formed *in situ* from a foamable mixture of a resin and a blowing agent. Although the adhesive foam layer of de Bruyne et al. does not completely fill the interstices of the spacer element with foam, the foam layer is said to "homogenize with or firmly adhere" to the cell walls.[3]

Kropa et al. and de Bruyne et al. do not show appellant's specific cured adhesive foam layer. We think it would be obvious, however, to substitute Simon et al.'s foamable adhesive ingredients for the foamable adhesive ingredients recited in the Kropa et al. and de Bruyne et al. patents, especially since Simon et al. teach their cellular resinous reaction

---

2. *Interstice* is defined in Webster's New International Dictionary (1949) as "* * * A space which intervenes between one thing and another; esp., a space between things closely set, or between the parts of a body * * *."

3. In this connection an analysis of appellant's drawing and his Exhibit A show that the foam adhesive layer does not completely fill the interstices · of the spacer element.

product has *excellent adhesion* to various metals, woods, etc. and has *the further characteristic of closely conforming with the contours of even very complex spaces or cavities.*

Appellant's method claims 7 to 12 include the steps of coating the surface of the outer sheets with a foam forming mixture and expanding the mixture into a cellular foam layer to bond the surface sheets and the core element or spacer element into a unitary article without the use of additional adhesive. For reasons set forth above we agree with the board that those claims would be suggested by the teachings of the Simon et al. patent, and the Kropa et al. or de Bruyne et al. patents. Kropa et al. teach the use of a spacer element and a viscous foamable interliner disposed between two sheets which are impregnated on the inner opposing surfaces with an adhesive composition. The assembly is heated under pressure to form a laminate.

Appellant urges that Kropa et al. use an additional adhesive. However, the examples in the Kropa et al. patent show that the patentees, in preparing their laminates, may use the *same* polymerizable composition in the interliner as that employed in impregnating the surface sheets. We think it would be obvious to one having ordinary skill in the art that the interliner material in Kropa et al., containing as it may the same adhesive composition that is used in impregnating the patentees' surface sheets, could be applied *directly* to the opposing inner faces of the patentees' surface sheets.

It is urged that the structure in Kropa et al. is not self-curing and that appellant's structure requires no additional heat. Appellant's specification, however, states that "a post-curing of the laminations 13 at a moderate temperature of from, say 125° to 225° F. for eight or ten hours, more or less, may be performed." Furthermore, claim 11 specifically requires exothermically heating said foamable mixture at a temperature of 125° F. to 225° F. to decompose the isocyanate and to cause the alkyd resin to expand.

Since we find that claims 5 to 12 are unpatentable over the Kropa et al. or de Bruyne et al. patents in view of the Simon et al. patent, it is unnecessary to consider the remaining art rejections or the rejection of claims 5 and 6 for lack of adequate support and indefiniteness.

For the reasons given above, the decision of the board is affirmed.

Affirmed.